## In Re Anonymous No. 85 D.B. 84

Disciplinary Board Docket No. 85 D.B. 84.

To the Honorable, Disciplinary Board of the Supreme Court of Pennsylvania:

Pursuant to the order of the Disciplinary Board, hearing committee [ ] consisting of [ ] were appointed to take evidence in the above matter and to report their findings and recommendations based thereon to the Disciplinary Board. The committee reports as follows.

## I. HISTORY OF PROCEEDINGS

A petition for discipline charging respondent with violation of the following disciplinary rules of the Code of Professional Responsibility:

(a) D.R. 1-102(A)(4).
(b) D.R. 1-102(A)(5).
(c) D.R. 1-102(A)(6).
(d) D.R. 6-101(A)(3).
(e) D.R. 7-101(A)(1).
(f) D.R. 7-101(A)(2).
(g) D.R. 7-101(A)(3).
(h) D.R. 7-102(A)(5).

Respondent failed to file an answer within the prescribed time; under the provisions of Rule

208(b)(3) of the Pennsylvania Rules of Disciplinary Enforcement, the charges are deemed at issue. Pursuant to its appointment, the hearing committee met for the purpose of receiving evidence in the form of testimony and documentary exhibits on January 24, 1985, at which hearing respondent appeared with counsel. Petitioner was represented by Disciplinary Counsel, and witnesses appeared and gave testimony.

## II. FINDINGS

The hearing committee finds the following facts to be true and pertinent to the petition for discipline:

(1) Respondent is a lawyer admitted to practice law in Pennsylvania who, between November, 1983, and February, 1984, maintained an office in [ ], Pennsylvania.

(2) Respondent is approximately 50 years of age.

(3) Petitioner is [A], née [ ], an individual residing at [ ].

(4) Petitioner was receiving Workmen's Compensation benefits when, on or about February 8, 1983, her employer's insurance carriers' attorney, [B], filed a petition for termination, suspension or modification of those benefits.

(5) In March, 1983, petitioner engaged respondent to represent her in her Workmen's Compensation claim.

(6) Petitioner and respondent reached an agreement that petitioner would pay respondent a flat fee of $1,500 for his representation, plus 20 percent of a lump-sum award, should one be received.

(7) Both before and after a referee's workmen's compensation hearing on April 6, 1983, petitioner was notified of several job prospects by [C], an employee of [D], a counseling and rehabilitation agen-

cy, but she did not make any real effort to follow through on the jobs and obtain employment.

(8) Petitioner was content to continue receiving her weekly benefits, ignoring respondent's warnings that the medical testimony and her failure to comply with the job search might result in loss or reduction of benefits.

(9) Respondent was well aware that petitioner did not desire a job search, and in fact in letters of November 14, 1983 and of November 18, 1983 used the possibility of a job search as a threat to her.

(10) Petitioner authorized respondent to explore the possibilities of a lump-sum settlement, known as a commutation of benefits.

(11) In response to his June 29, 1983 demand for $35,000, respondent received offers from [B] of $20,000 on August 22, 1983 then of $22,500 on September 15, 1983, and finally of $24,000 on November 8, 1983.

(12) Petitioner refused all the offers.

(13) On November 14, 1983 and again on February 3, 1984, respondent recommended to petitioner in writing that she accept the $24,000 offer.

(14) In his letter of November 14, 1983, respondent cites the likelihood of a renewed job search by the insurance company as a reason for petitioner to accept the commutation offer.

(15) Respondent sent [B] a blind copy of his November 14, 1983, letter to petitioner.

(16) Respondent wrote [B] on November 18, 1983, relating petitioner's refusal of the $24,000 offer. He urged opposing counsel to have [C] recommence the job search routine "to force her to move off the dime."

(17) [C] is a disinterested witness regarding her contacts with respondent and his office in November and December, 1983.

(18) [C]'s testimony as to said contacts was forthright and credible, whereas that of respondent was evasive and not credible.

(19) As an indirect result of respondent's November 18, 1983 letter to [B], [C] telephoned respondent's office on November 30, 1983, at which time she was advised by his assistant, [E], that respondent wished the job search to begin anew.

(20) On November 30, 1983, [C] wrote petitioner advising her she had been asked by respondent to begin the job search. On the same date she also wrote respondent, confirming the telephone conversation with his assistant.

(21) On December 5, 1983, respondent responded to [C] with a false denial that he had requested the job search. A copy was sent to petitioner.

(22) On February 3, 1984, respondent again wrote to petitioner, encouraging acceptance of the $24,000 offer, and sent a blind copy to opposing counsel.

(23) Respondent wrote a "private and confidential" letter to opposing counsel on February 28, 1984, in which he stated that petitioner continued to reject the $24,000 offer, that he felt he had earned the settlement; and that he requested [B] to officially withdraw the $24,000 offer.

## III DISCUSSION

After careful consideration of the facts as found above and respondent's efforts to explain his conduct, it is the opinion of the hearing committee that respondent's actions result from an excess of zeal in seeking to convince his client to accept a lump-sum settlement offer he believed to be the best obtainable under the circumstances. To accomplish this, respondent asked opposing counsel to apply pres-

sure on respondent's client and then denied his action when confronted by the client. While we understand respondent's belief that he had in good faith negotiated perhaps the best possible settlement of her case and that her unexplained and therefore unreasonable refusal to accept the settlement was both exasperating and an obvious threat to both his lawyer-client relationship and to his fee, he was not justified in lying to his client and the insurance carrier when his reprehensible conduct was disclosed.

Having observed respondent's client testify as a witness against him, we were privileged to observe her personal characteristics, which in our opinion indicate that respondent was confronted with an unusually difficult and frustrating client who stirred him to measures which normally lie beyond acceptable professional techniques and measures designed to obtain a client's understanding and cooperation with an attorney's efforts to protect his client's interests.

Specifically, the hearing committee concludes that respondent's behavior in requesting opposing counsel to restart the job search, and then vehemently denying the request when it was exposed to his client was deceitful and prejudicial to the administration of justice and was therefore a violation of the following Disciplinary Rules; D.R. 1-102(A)(4); D.R. 1-102(A)(5); D.R. 1-102(A)(6); and D.R. 7-102(A)(5).

The hearing committee also finds that respondent's parting request to opposing counsel to withdraw its settlement offer to the client even if motivated by his anger at her unexplained refusal to follow his advice, was a negative reflection on respondent's fitness to practice law, and therefore constituted a further violation of D.R. 1-102(A)(6).

However, the committee specifically finds that respondent did attempt to steer the client through the shoals of the petition to terminate, suspend or modify and worked vigorously to secure her a reasonable settlement offer, which he believed to be in her best interest. In no wise, then, did he neglect her case, fail to seek her legitimate objectives, fail to carry out the contract of his employment, or prejudice the rights and best interest of his client.

We are of the opinion that although respondent exercised very poor judgment in responding to his client's exasperating and continued frustrating behavior, his behavior was not intentionally malicious towards his client and was certainly not intentionally destructive of her best interests.

The committee will also address an additional matter in order to clear the record. Respondent himself wrote section IV of his brief, alleging that Disciplinary Counsel may have violated D.R. 1-102(A)(4) by falsely stating he had not subpoenaed referee [F]. On reviewing the notes of testimony at pages 88 and 127, the committee finds no substance to the charge that Disciplinary Counsel lied. Further, since the referee's testimony was of little relevance to the hearing, respondent's charge that Disciplinary Counsel attempted to suppress exculpatory evidence is also without foundation. Further, the rule cited by respondent, D.R. 7-103(B), addresses criminal prosecutors, and so does not fit this case.

## IV CONCLUSION

Based on the foregoing findings, the hearing committee finds that respondent violated the following Pennsylvania Disciplinary Rules: D.R. 1-102(A)(4); D.R. 1-102(A)(5); D.R. 1-102(A)(6); and D.R. 7-102(A)(5) as charged. The committee con-

cludes there was no violation of D.R. 6-101(A)(3); D.R. 7-101(A)(1); D.R. 7-101(A)(2); and D.R. 7-101(A)(3) as alleged by the assistant disciplinary Counsel who we believe has failed, in these respects, to meet his burden of proving the board's case in a clear and convincing manner.

For the foregoing reasons, we are of the opinion that respondent should receive a private reprimand for the violations found above.

## ORDER

ELLIOTT, *Chairman,* And now this March 17, 1986, the report and recommendation of hearing committee [ ] dated December 10, 1985 is accepted; and it is ordered and decreed, that said [respondent] of [ ] County, be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(5) of the Pennsylvania Rules of Disciplinary Enforcement at the next session of this board. Costs are to be paid by respondent.